IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:11-CV-773-D

| | |
|---|---|
| SHARON E. SANDERS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

In this action, pro se plaintiff Sharon E. Sanders ("plaintiff") challenges the final decision of defendant Commissioner of Social Security ("Commissioner") denying her application for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI") on the grounds that she is not disabled.[1] The case is before the court on the respective parties' motions for judgment on the pleadings. (D.E. 24, 29). Plaintiff did not file a memorandum with her motion. The Commissioner filed a memorandum in support of her motion (D.E. 30) and plaintiff a memorandum (D.E. 31) with exhibits (D.E. 31-1 to 31-5) in apparent response to the Commissioner's motion. The motions were referred to the undersigned Magistrate Judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (D.E. 32). For the reasons set forth below, it will be recommended that plaintiff's motion be allowed, the Commissioner's motion be denied, and this case be remanded.

---

[1] The statutes and regulations applicable to disability determinations for DIB and SSI are in most respects the same. The provisions relating to DIB are found in 42 U.S.C. subch. II, §§ 401, *et seq.* and 20 C.F.R. pt. 404, and those relating to SSI in 42 U.S.C. subch. XVI, §§ 1381, *et seq.* and 20 C.F.R. pt. 416.

## I. BACKGROUND

### A. Case History

Plaintiff filed applications for DIB and SSI on 20 May 2010, alleging a disability onset date of 1 October 2009. Transcript of Proceedings ("Tr.") 21. The applications were denied initially and upon reconsideration, and a request for hearing was timely filed. Tr. 20. On 25 July 2011, a hearing was held before an Administrative Law Judge ("ALJ") at which plaintiff was represented by a nonattorney advocate. Tr. 20; 33-78. In a written decision dated 22 August 2011, the ALJ found that plaintiff was not disabled and therefore not entitled to DIB or SSI. Tr. 21-29. Plaintiff timely requested review by the Appeals Council, before which she was represented by the same nonattorney advocate. Tr. 6-17. The Appeals Council admitted new evidence submitted by plaintiff, but denied the request for review on 17 November 2011 without making any supporting findings.[2] Tr. 1-5. At that time, the decision of the ALJ became the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 416.1481. Plaintiff commenced this proceeding for judicial review pro se on 29 December 2011, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). (*See In Forma Pauperis* Mot. (D.E. 1); Supp. *In Forma Pauperis* Mot. (D.E. 5); Order Allowing Suppl. *In Forma Pauperis* Mot. (D.E. 7); Compl. (D.E. 8)).

### B. Standards for Disability

The Social Security Act ("Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to

---

[2] The Appeals Council stated simply:

> In looking at your case, we considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of Appeals Council. We found that this information does not provide a basis for changing the [ALJ's] decision.

Tr. 2.

last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see* 42 U.S.C. § 1382c(a)(3)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A); *see* 42 U.S.C. § 1382c(a)(3)(B). The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The disability regulations under the Act ("Regulations") provide a five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in [§ 404.1509 for DIB and § 416.909 for SSI], or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in [20 C.F.R. pt. 404, subpt. P, app. 1] . . . and meets the duration requirement, we will find that you are disabled. . . .
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity ["RFC"] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .
>
> (v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not

>disabled.  If you cannot make an adjustment to other work, we will find that you are disabled. . . . .

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The burden of proof and production rests with the claimant during the first four steps of the analysis. *Pass*, 65 F.3d at 1203. The burden shifts to the Commissioner at the fifth step to show that alternative work is available for the claimant in the national economy. *Id.*

In the case of multiple impairments, the Regulations require that the ALJ "consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. §§ 404.1523, 416.923. If a medically severe combination of impairments is found, the combined impact of those impairments will be considered throughout the disability determination process. 20 C.F.R. §§ 404.1523, 416.923.

### C. Findings of the ALJ

Plaintiff was 47 years old on the alleged onset date of disability and 49 years old on the date of the administrative hearing. Tr. 37. She testified that she completed one year of business school, along with various certifications, and her past work includes employment as a billing clerk and accounting clerk. Tr. 28 ¶ 6; 37-38.

Applying the five-step analysis of 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4), the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since her alleged onset of disability. Tr. 23 ¶ 2. At step two, the ALJ found that plaintiff had the following medically determinable impairments that are severe within the meaning of the Regulations: Crohn's disease, irritable bowel syndrome, arthritis, and depression. Tr. 23 ¶ 3; *see* 20 C.F.R. §§ 404.1520(c), 416.920(c). At step three, the ALJ found that plaintiff's impairments did not meet or medically equal any of the listings. Tr. 24 ¶ 4.

The ALJ next determined that plaintiff had the RFC to perform a limited range of sedentary work (*i.e.*, work involving lifting, carrying, pushing, or pulling up to 10 pounds occasionally and a negligible amount of weight frequently). *See* 20 C.F.R. §§ 404.1567(a), 416.967(a).[3] Specifically, he found that plaintiff requires the option to alternate between sitting and standing every 60 minutes; could engage in postural activities (*e.g.*, stooping, crouching, crawling, climbing) no more than frequently; and was limited to no more than frequent interaction with coworkers, supervisors, or the public. Tr. 25 ¶ 5. Based on this RFC, the ALJ found at step four that plaintiff was capable of performing her past relevant work as billing clerk and accounting clerk. Tr. 28 ¶ 6. The ALJ accordingly concluded that plaintiff was not disabled. Tr. 29 ¶ 7.

## II. DISCUSSION

### A. Standard of Review

Under 42 U.S.C. § 405(g), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Perales*, 402 U.S. at 401 (quoting *Consol. Edison*

---

[3] *See also Dictionary of Occupational Titles* (U.S. Dep't of Labor 4th ed. rev. 1991) ("DOT"), app. C § IV.c, def. of "Sedentary Work," http://www.oalj.dol.gov/libdot.htm (last visited 24 Apr. 2013). "Sedentary work" and the other terms for exertional level as used in the Regulations have the same meaning as in the DOT. *See* 20 C.F.R. §§ 404.1567, 416.967.

5
Case 5:11-cv-00773-D   Document 33   Filed 04/24/13   Page 5 of 14

*Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Perales*, 402 U.S. at 401.

Where, as here, the Appeals Council considers additional evidence before denying the claimant's request for review of the ALJ's decision, "the court must 'review the record as a whole, including the [additional] evidence, in order to determine whether substantial evidence supports the Secretary's findings.'" *Felts v. Astrue*, No. 1:11CV00054, 2012 WL 1836280, at *1 (W.D. Va. 19 May 2012) (quoting *Wilkins v. Sec'y Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991)). Remand is required if the court concludes that the Commissioner's decision is not supported by substantial evidence based on the record as supplemented by the evidence submitted at the Appeals Council level. *Id.* at *1-2 (holding that Commissioner's decision implicitly determining claimant not to have a severe mental impairment and failing to consider the effect of any such impairment on his ability to work was not supported by substantial evidence in light of additional evidence of claimant's depression admitted by Appeals Council, and remanding case to Commissioner for further proceedings).

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently

explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

B.     **Plaintiff's Contentions**

In her memorandum, plaintiff contends, in effect, that her impairments prevent her from engaging in gainful work activity on a regular and continuing basis—that is, eight hours a day, five days a week, or on an equivalent schedule. *See* Soc. Sec. Ruling 96-8p, 1996 WL 374184, at *2 (2 July 1996). She relies on, among other things, the hearing testimony of the vocational expert (Tr. 75) that a person would not be able to hold a job with breaks and absences at the frequency plaintiff alleges she requires; the third-party function report of a former coworker of plaintiff (Tr. 287-97) about the limitations her impairments place on her; two handwritten letters (Tr. 312-18, 320-21) she submitted to the Appeals Council about her objections to the ALJ's decision; and the exhibits (D.E. 31-2 to 31-6) she submitted for the first time in this court, which relate to her physical condition and ability to pay for medical services.[4] The court need not resolve the merits of plaintiff's contention because it finds that the case must be remanded on the other grounds discussed below.

C.     **Failure of ALJ's Decision to Adequately Address Evidence of Plaintiff's Mental Impairments**

Remand is required because the ALJ's decision fails to address the evidence in the record that plaintiff is suffering from a paranoia disorder. The medical evidence of paranoia includes a series of notes of office visits by plaintiff with treating mental health providers at U.N.C. Hospitals. One concerns plaintiff's visit with Stephan Weinland, Ph.D. on 19 January 2011. (Tr.

---

[4] Given the recommended disposition of this case, it is not necessary for the court to address whether remand is required for consideration of this newly submitted evidence pursuant to sentence six of 42 U.S.C. § 405(g).

422-24). At that visit, plaintiff disclosed, while crying inconsolably, that the people for whom she previously worked had bugged her home, that they had obtained information she feared would be used against her, and that she had called and written various government agencies to debug her home, but without success. Tr. 424. Dr. Weinland diagnosed her with, among other conditions, possible[5] major depressive disorder with psychotic features. Tr. 424.

At a visit with Marcus Muehlbauer, M.D., Ph.D. on 8 February 2011, plaintiff reported that unidentified people were trying to kill her family and that her house was being wired. Tr. 420. She apparently acknowledged that she had hidden concerns of this type from others for years. *See* Tr. 420. Dr. Muehlbauer found that plaintiff "clearly has signs of psychosis which could be a complication of her depression." Tr. 421. Plaintiff again reported at a 16 February 2011 visit with Dr. Weinland that the people with whom she had worked were spying on her. Tr. 418. This time, he made the definitive diagnosis of major depressive disorder with psychotic features. Tr. 419. While he characterized plaintiff as having "mild psychotic symptoms," he noted that it was important for her to be closely monitored given these symptoms. Tr. 418, 419.

At a 4 April 2011 visit with psychiatrist Bethany Geib-Rusch, M.D., plaintiff spoke again about the purported surveillance of her home—both audio and video—by her former coworkers as well as her having the house inspected for bugs and contacting the federal government for help. Tr. 412. She also spoke of how she felt threatened by a van pulling next to her in a parking lot and harassed by two women who approached each other and plaintiff from opposite ends of an aisle at a grocery store and spoke with each other. Tr. 412. Dr. Geib-Rusch diagnosed plaintiff with, among other conditions, possible psychosis, not otherwise specified

---

[5] The possible nature of this and other diagnoses referenced herein is indicated by the abbreviation "R/O," meaning rule out. *See, e.g.*, Carlton E. Munson, Ph.D., *The Mental Health Diagnostic Desk Reference* 78-79 (2d ed. 2001).

(*i.e.*, "NOS")[6]; possible major depressive disorder with psychotic features; and possible delusional disorder. Tr. 413.

Plaintiff testified at the hearing about her belief that she was being watched:

Q      And, do you have any problems with feeling that you're being treated unfairly or being watched?

A      Yes, I do.

Q      Would you describe that?

A      I feel as though -- if I'm at home, and I know that I'm the only one at the house, and something happens to me in that house, and I know no one else was there, and I go into a store, or restaurant, or a facility, and someone replays my activities that I do, when I know I was the only one there, that's not paranoia.
      That's not paranoia. If someone can sit there and cite what you do with your hygiene, when you're in the privacy of your own bathroom, that is not paranoia.

Q      Have you had times where you believed that people were watching you or following you?

A      Yes. I've -- I've actually been in a parking lot, and someone almost tried to hit me with the car. That happened to me more than one time. And, I'm not a confrontational person. I'm not a person to start arguments, you know.
      I've always been a person to try to do things to help as much as possible, but if I feel that I'm·threatened, I'm going to defend myself -- not going to do anything violent, but I don't have a problem with speaking my mind.

Q      Have you ever had a time that you had to call someone to search your house?

A      I was afraid. I didn't know whom to trust. I wanted to call the police. I wrote the congressman. I wrote the governor. I try to talk to attorneys. Nobody would help me, so I was on a quest by myself, and I had very few friends who listened to me or believe me, but that's okay. That's okay.

Tr. 57-58.

---

[6] NOS is used, in among other circumstances, when "[t]he [individual's] presentation conforms to the general guidelines for a mental disorder in the diagnostic class, but the symptomatic picture does not meet the criteria for any of the specific disorders." *Diagnostic and Statistical Manual of Mental Disorders* 4 (4th ed., Text Revision (2000)) ("DSM–IV–TR").

In her 16 September 2011 letter to the Appeals Council, she elaborated on these concerns:

> I have been writing the follow[ing] agencies for help to get (I) Sharon E. Sanders out of an corrupt illegal action against me.
>
> The agencies below have documentations showing I have been fighting racial intolerance, obstruction, hate crimes, [illegible] medical security in documentation which would cause major problems in my third time applying for my SSI & SSDI & Medicaid benefits.
>
> 1) U.S. Department of Justice
> 2) U.S. Human and Health Services
> 3) Consumer of Financial Protection Bureau
> 4) The White House
> 5) Senator Richard Burr
> 6) Senator Kay Hagan
>
> The problem is the main subject matter illegal survillence in our home: [address]. illegal GPS wired survillence in my personal vehicle – Ford Fusion 2009 bought at Capital Ford, Raleigh, N.C.
>
> Under this survillence [illegible] under the U.S. Human & Health Services Department, I have been writing indicating my healthcare at U.N.C Healthcare, Chapel Hill, NC. was not documenting what they discuss to me in my doctor office visits, therefore some of my medical records of treatment & complete medical diagnosis was not in my medical records, along with the third party interference with the illegal survillence caused me major problems getting treated with privacy & being announced in the public & communities, & public retail stores etc as relating whatever information they choose to discredit me.
>
> [I]t has been a hard road to show my impairments, due to this illegal survillence to fi[gh]t the corrupt individuals involved, which I have provided to the federal agencies listed in this letter.

Tr. 313-16 (spellings and punctuation in original).

While submitted after the ALJ's decision, this letter certainly appears to relate not only to the time at which it was written, but also to the prior period, extending into the alleged period of disability. Even if that were not the case, it is dated so close in time to issuance of the ALJ's

decision—less than a month—that it would arguably be relevant to plaintiff's condition during the alleged period of disability anyway.

The evidence of paranoia is otherwise manifestly material. Not only do the symptoms described have the potential, in general, to significantly impair plaintiff's ability to work, but the fact that plaintiff's apparent paranoia is tied to her prior employment could conceivably enhance its impact on her ability to work. Further, there is evidence that the apparent paranoia has lasted for a continuous period of at least 12 months and, alternatively, that it could be expected to do so, thereby tending to show compliance with the duration requirement in 20 C.F.R. §§ 404.1509 and 416.909.

Nevertheless, the ALJ's decision does not expressly address the evidence of paranoia in the record before him. He does not even include any reference to it in his summary of plaintiff's testimony. *See* Tr. 25-26 ¶ 5. As indicated, the Appeals Council made no findings at all in its order denying review.

While the ALJ does discuss plaintiff's depression, there is no indication that this discussion encompasses the evidence of paranoia. Indeed, given the distinctive nature of the evidence of paranoia in this case, separate discussion of such evidence is necessary to adequately explain the decision reached.

The ALJ also mentions the office visit notes from U.N.C. Hospitals reviewed above. *See* Tr. 26-27 ¶ 5. The discussion, however, omits any reference to the evidence of paranoia and instead focuses on her depression and GAF (*i.e.*, Global Assessment of Functioning)[7] scores. He points out that in the January 2011 note (Tr. 424) plaintiff was given a GAF score of 55, indicating "moderate symptoms" (Tr. 26), and that this score continued through the April 2011

---

[7] A GAF score "reflects the individual's overall level of functioning," excluding impairments in functioning due to physical and environmental limitations. DSM–IV–TR 32.

11

note (Tr. 413), but this finding regarding plaintiff's overall level of functioning, again, does not address the evidence of paranoia specifically.

In addition, the ALJ discusses the opinion of Disability Determination Service[8] consulting psychologist Brian Grover, Psy.D. that plaintiff was capable of performing simple, routine, repetitive tasks in a stable, low pressure work environment (Tr. 105, 116). Tr. 28. But that opinion was rendered on 5 November 2010 without benefit of plaintiff's subsequent disclosure of her concerns about being watched. *See* Tr. 100, 103-05 (Dr. Grover's mental RFC assessment and notes re DIB claim); 111, 114-16 (same re SSI claim).

The absence of any reference in the ALJ's decision and the Appeals Council order to the evidence of paranoia precludes the court from determining whether it was considered at each applicable step of the sequential analysis and, if so, the weight given such evidence and the associated rationale. As a result, the court cannot determine whether the Commissioner's decision is supported by substantial evidence and based on the proper legal standards. The case must accordingly be remanded. *Cox v. Astrue*, Civ. Act. No. 11–83–JBC, 2012 WL 2683826, at *3 (E.D. Ky. 6 July 2012) (remand ordered where ALJ made insufficient findings regarding Social Security claimant's paranoia and other mental impairments in his credibility determination); *Kuznetsov v. Astrue*, Civ. Act. No. 10-7-E, 2d, 2012 WL 11028, at *7, 8 (W.D. Pa. 3 Jan. 2012) (remand ordered where Social Security claimant's paranoid thoughts and other mental impairments "are not discussed at all by the ALJ at Step Five with respect to how they impact her occupational job base"); *Fuller v. Astrue*, No. 08-3292, 2010 WL 272877, at *8, 10, 11 (C.D. Ill. 15 Jan. 2010) (notwithstanding ALJ's finding that claimant diagnosed with major depression and other impairments consistently had GAF scores of 50, remand ordered where at

---

[8] The Disability Determination Services is a North Carolina state agency that makes decisions on applications for disability under the Social Security program. *See* N.C. Div. of Vocational Rehab. Serv., http://www.ncdhhs.gov/dvrs/pwd/dds.htm (last visited 24 Apr. 2013).

step three in discussing the B criteria "the ALJ did not evaluate or even mention extensive medical evidence indicating that [claimant] was paranoid and had trouble interacting with other people"); *see also* Soc. Sec. Ruling 85-15, 1985 WL 56857, at *6 (1 Jan. 1985) (stating that section of the ruling on mental impairments is intended "to emphasize the importance of thoroughness in evaluation on an individualized basis").

Nothing herein shall be interpreted as an expression by the court of an opinion regarding the weight to be accorded the evidence of paranoia. That is a matter for the Commissioner to determine in the remand proceedings.

## III. CONCLUSION

For the foregoing reasons, IT IS RECOMMENDED that plaintiff's motion (D.E. 24) for judgment on the pleadings be ALLOWED, the Commissioner's motion (D.E. 29) for judgment be DENIED, and this case be REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum and Recommendation.

IT IS ORDERED that the Clerk send copies of this Memorandum and Recommendation to plaintiff and counsel for the Commissioner, who shall have until 8 May 2013 in which to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. Any response to objections shall be filed within 14 days after service of the objections on the responding party.

This, the 24th day of April 2013.

_____
James E. Gates
United States Magistrate Judge